**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JUAN CONTRERAS, | § | |
|     Movant, | § | |
| | § | |
| v. | § | CIVIL ACTION  NO. B-09-098 |
| | § | (CR. NO. B-02-562) |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Juan Contreras (Contreras) brings before the Court the present Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Docket No. 1).  The Court recommends that such motion be granted for the reasons detailed below.

## BACKGROUND

This 28 U.S.C. §2255 motion involves a complex drug-trafficking ring that operated in South Texas.  The movant, Juan Contreras, was one of three Cameron County Precinct Seven Constables indicted as a result of that drug trafficking ring.  Also indicted was Jose A. Morales who, although not a constable, worked with the indicted constables to ensure successful drug-trafficking into the United States.  Morales made arrangements for narcotics to be placed at the Rio Grande River's edge, on the side belonging to the United States, where constables, including Contreras, would retrieve it and give it safe transport to stash houses located in the area.

The Rio Grande River, although technically within Cameron County's Precinct Seven, is customarily left to the supervision of the United States Border Patrol.  Sometime in July of 2000, Border Patrol Agents began to notice a  pattern of constables appearing along the river's edge.  The constables often claimed to be working on drug interdiction.  Yet, the constables' duty ledger would later show no

such activity.  The constables were also monitoring Border Patrol radio traffic and trying to elicit information involving drug interdiction, in otherwise casual conversations, from  Border Patrol agents supervising the area.

On February 22, 2001, Contreras approached the Rio Grande River in full uniform and in a marked patrol unit, which immediately arose the suspicion of Border Patrol agents.  As Contreras left the riverbanks, he pulled his patrol unit parallel to a Border Patrol agent's vehicle and began to make small talk  with that agent.  Relatively soon into the conversation Contreras boasted that he had just seized a rather large quantity of marijuana.

The Border Patrol agent asked whether he could see the marijuana; Contreras allowed the agent to so do.  The agent called his supervisor as soon as he identified the marijuana bundles.  Contreras followed suit and also called his supervisor, Lieutenant Constable Villareal.  Contreras claimed to have seized the marijuana and loaded it into the trunk himself, yet his clothes were clean and showed no trace of lifting 300 pounds of wet, muddy marijuana bundles.  Soon after, several Border Patrol agents arrived and all present agreed that the marijuana should be transported to the Cameron County Sheriff's  Office.

As soon as the constables left to deliver the drugs to the Sheriff's office, Border Patrol agents arrived at the scene of Contreras's alleged river-front seizure.  Border Patrol agents discovered an additional 400 pounds of marijuana as well as five or six individuals who upon seeing the agents swam back across the river.  Contreras claimed to have seized the drugs found in his patrol unit only minutes before at the same location.  Additionally, the markings, packaging, and size of the newly-located bundles matched the markings, packaging, and sizes of the bundles found in Contreras's patrol unit.

Upon arriving at the Sheriff's office, Contreras and Villareal were questioned by DEA special agents.  Both interviews produced various inconsistencies amongst themselves and in relation to which constable was being questioned.  These inconsistences coupled with well-established suspicion led to

2

indictments being returned on October 8, 2002.

On October 9, 2002, a warrant was issued for Contreras's arrest. (Docket No. 39).  Contreras was then appointed counsel on November 13, 2002.  (Docket No. 46).  Nevertheless, he appeared with retained counsel, Hector J. Villareal, on November 27, 2002. (Docket No. 49). Contreras was subsequently arraigned on December 5, 2002.  (Docket No. 53).  On December 12, 2002, Hector J. Villareal was substituted with Attorney Larry Warner.  (Docket No. 61).   The final pre-trial conference transpired on June 4, 2003, and Contreras's jury trial began the next day on June 5, 2009.  (Docket No. 180, 181).  The jury trial ended on August 13, 2003.  (Docket No. 253).

United States District Judge Hilda G. Tagle sentenced Contreras  to: 292 months in prison, a five-year term of supervised release with supervision as to counts one,  four, and five; 60 months in prison, a three-year term of supervised release term with supervision as to count six; and 300 months in prison, a three-year term of supervised release with supervision as to count seven.  The sentence for counts one, four, and five were to run concurrently, while the sentence for count six was to run consecutively to the sentences for counts one, four, and five.  Finally, the sentence for count seven was to run consecutively to the sentences for counts one, four,  five, and six. (Docket No. 347).  Contreras was sentenced to a total of 652 months in federal prison.

Contreras filed his Notice of Appeal on February 12, 2009, and the Office of the District Clerk entered Judge Tagle's judgment on February, 20, 2004. (Docket No. 362).  The Fifth Circuit Court of Appeals affirmed the district court on December 7, 2007.  (Docket No. 601).  The Supreme Court denied Certiorari on June 9, 2009. Contreras then filed  the instant Motion to Vacate, Amend, or Set Aside Judgment Pursuant to § 2255 on April 13, 2009.  (Docket No. 719).  The United States, after a successful motion for extension of time, filed its response on August 13, 2009. (Docket No. 728).   The Court then held an evidentiary hearing on October 28, 2009.

## ALLEGATIONS

Movant argues that his trial counsel opened the door to otherwise inadmissible evidence; and that such admission was of such a prejudicial effect to render the trial attorney's assistance constitutionally ineffective.

Movant further alleges ineffective assistance of counsel insofar that his counsel did not object to the mandatory nature of the sentencing guidelines.

Movant's final argument is that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

## SECTION 2255  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, there are four grounds upon which a defendant may move to vacate, set aside or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.  The nature of a collateral challenge is extremely limited, being reserved only for issues of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If the error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

## TIMELINESS

The timeliness of Contreras's motion presents the issue of first concern.  Title 28 U.S.C. § 2255 provides a one-year time limitation for filing a § 2255 motion.  The limitation period runs from the latest of:

4

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). A conviction becomes final for § 2255 purposes at the expiration of the direct appellate process. *United States v. Gentry*, 432 F.3d 600, 604 (5th Cir. 2005). The direct appellate process ends when a final judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or finally denied. *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987).

The Supreme Court denied Contreras's Petition for Writ of Certiorari on June 9, 2008. Contreras was required to file a Section 2255 motion by June 9, 2009, or one year from the expiration of the direct appellate process. *Clay*, 537 U.S. at 525. Contreras filed the present motion on April 13, 2009, and so, his motion is timely.

## THE CAUSE AND PREJUDICE STANDARD

The only non-ineffective assistance of counsel claim relates to the three hundred and sixty (360) month sentence Contreras received for two firearm convictions. Specifically, Contreras disagrees with the severity of those sentences alleging that the severity of the sentences amounts to cruel and unusual punishment. Nevertheless, Contreras had an opportunity to make this claim via direct appeal, but failed to raise it at that time. That failure placed the burden on Contreras to show cause for not so raising it *United States v. Frady*, 456 U.S. 152, 168 (1982).

Moreover, the Supreme Court held that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment because such a judgment must command respect.

> When Congress enacted § 2255 in 1948, it simplified the procedure for making a collateral attack on a final judgment entered in a federal criminal case, but it did not purport to modify the basic distinction between direct review and collateral review. It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice.

*Id.* at 165.  The cause standard required Contreras to show that some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances. *United States v. Guerra*, 94 F. F.3d 989, 993 (5th Cir. 1996).  Some factors constituting cause include: (1) interference by officials that makes compliance with the procedural rule impracticable; (2) a showing that the factual or legal basis for the claim was not reasonably available to the petition at the prior occasion; and (3) ineffective assistance of counsel in the constitutional sense.[1]  *Id.*

The Supreme Court carved out a narrow exception to the cause and prejudice standard discussed above based on the possible miscarriage of justice, but an argument based on miscarriage of justice must establish innocence that contradicts a conviction.  *McCleskey v. Zant*, 499 U.S. 467, 495 (1991).  The miscarriage of justice exception was carved out for only the most extraordinary of claims, a class in which

---

[1]Contreras may argue that it was through the ineffective assistance of counsel that he failed to bring the claims up via direct appeal, but nevertheless, Contreras does not allege that he failed to bring the claim based on the ineffective assistance of counsel, but simply litigates the issue of whether the district court appropriately interpreted legal principles.  Put another way, it is one thing to argue that his attorney failed him in not bringing the claim via direct appeal, and it is quite another to argue, as Contreras does, that the district court misapplied legal principles. The former satisfies the cause and prejudice standard while the latter does not.

Contreras's arguments relating to the propriety of his sentences for employing firearms while trafficking narcotics do not belong.

An examination of Contreras's claim evinces a disagreement with the sentences rather than alleging any fault by his attorney or resulting prejudice from his attorney's action or inaction.  Here the claim is mere disagreement with the severity of the sentences.  Such disagreements must be litigated via direct appeal, and not via collateral attack.  This is not the appropriate avenue for Contreras's claim regarding the severity of his sentences.

However, even if it were, Contreras overlooks relevant facts.  Contreras protests the disparate sentence that he received when compared to his co-defendants. Contreras seems to misunderstand that he was charged and convicted of two separate firearm charges.  Defendant Villareal was only charged and convicted of one firearm violation.  Defendant Jimenez was also only charged with one firearm conviction, but he was acquitted.  Therefore, all three defendants were not equally culpable as they stood to be sentenced.  Defendant Jimenez did not have a firearm conviction;  Defendant Villareal had a solitary firearm conviction; and Defendant Contreras had two firearm convictions.  It stands to reason that their sentences would not be equal.  The Government had a rational basis in charging the defendants in the manner in which it did.  *United States v. Lawrence*, 179 F.3d 343, 347-350 (5th Cir. 1999).  Contreras's disagreement with the consequences of his actions do not a constitutional injury make.

## THE MERITS OF THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Contreras does present claims that are not procedurally barred.  Movant argues that his counsel was constitutionally ineffective by: (1) presenting meritless arguments via direct appeal; (2) opening the door to *Bruton* evidence during questioning; and (3) failing to object to the mandatory nature of the sentencing guidelines.

7

The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* standard also applies to allegations of defective appellate counsel as well.  *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994), *cert. denied*, 513 U.S. 1114 (1995).  A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.  *See Strickland v. Washington*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 231 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1035 n.1 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

Additionally "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland v.*

8

*Washington*, 466 U.S. at 691, 104 S.Ct. at 2067. "Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.*  In order to establish that he sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. at 391; *Strickland v. Washington*, 466 U.S. at 694; *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (stating that a petitioner must show a reasonable probability that but for his appellate counsel's error, the outcome of his appeal would have been different).

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair.  Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.  *Williams v. Taylor*, 529 U.S. at 393 n.17; *Strickland v. Washington*, 466 U.S. at 692.

Because a convicted defendant must satisfy *both* prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice under that test makes it unnecessary to examine the other prong. *See Strickland v. Washington*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 721; *Green v. Johnson*, 116 F.3d at 1122; *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d at 210.  Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice.  *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987), *cert. denied*, 484 U.S. 842 (1987).  It is also unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice.  *See Black v. Collins*, 962 F.2d at 401; *Bates v. Blackburn*; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057 (1987).

Once again, Movant argues that his counsel was constitutionally ineffective by: (1) presenting meritless arguments via direct appeal; (2) opening the door to *Bruton* evidence during questioning; and (3) failing to object to the mandatory nature of the sentencing guidelines.

A.    Ineffective Assistance of Counsel: Meritless arguments via direct appeal

Movant argues that, "the issues raised by petitioner's [sic] counsel during the appeal were so frivolous that they fell below the standard of reasonableness under the core of Sixth Amendment rights. The Court's opinion clearly reflects the frivolous arguments presented, and the lack of due diligence of counsel at the time of deciding what to raised [sic] during the appeals process for the court's determination." Mot. to Vacate . . . at 5. (Docket No. 1). Admittedly, the Fifth Circuit, several times throughout its opinion, states that Contreras's arguments are completely without merit. Nevertheless, Contreras's attorney filed no less than twenty-five grounds for appeal. Moreover, as they relate to this claim, Movant's instant claims amount to no more than dissatisfaction with the outcome of that proceeding. Movant alleges ineffective assistance of counsel because the claims argued via direct appeal were unsuccessful.

Constitutionally effective assistance of counsel does not exclude arguments that are unsuccessful, but instead each case must turn on the totality of the facts in the entire record. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983). Except for the *Booker* claim, a claim that is discussed in Part C below, Contreras can point to no other sure-fire argument that went unmade. Outside of the *Booker* claim, Contreras's simply disagrees with the tactics and arguments chosen by his appellate counsel. Nevertheless, such decisions are left to the discretion of the attorney not the client. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). It is difficult to win a *Strickland* claim on the grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances. *Johnson v. Alabama*, 256 F.3d 1156, 1188 (11th Cir. 2001). Contreras's appellate

attorney's arguments when analyzed not in a vacuum but in the realities of the case appear to –albeit ultimately unsuccessful– have been reasonable at the time they were undertaken.  Contreras cannot establish ineffective assistance of counsel simply because the arguments advanced by his attorney failed.

      B.      Ineffective Assistance of Counsel: *Bruton* violation.

A defendant has a Sixth Amendment right to face his accuser.  This right includes the ability to block non-testifying co-defendant's confessions from being introduced at one's trial.  *Bruton v. United States*, 391 U.S. 123, 126 (1968).  The Fifth Circuit Court of Appeals has limited *Bruton* when the confession is admitted at the invitation of the defendant or when such admissions are harmless beyond a reasonable doubt. *United States v. Matthews*, 173 F.3d 295, 300 (5th Cir. 1999).   Here it is undisputed that *Bruton*-type evidence was introduced at the defendant's invitation.[2] The only remaining question is whether that invitation was ineffective assistance of counsel.  The Court, while in disagreement with the United States as to reasons why, does not find such an invitation to have been ineffective assistance of counsel.

Effective assistance of counsel does not exclude relying on non-conventional theories of defense. However, the pursuit of unconventional theories may not deprive the defendant of the meaningful and effective assistance of counsel.  As already discussed, the ineffective assistance of counsel may be established only by proving that one's attorney conducted themselves in an unprofessional manner, and that such conduct resulted in actual prejudice to the defense. The Fifth Circuit has ruled that legitimate reasons may exist to pursue unusual defenses.  *United States v. Molina-Uribe*, 429 F.3d 514, 520 (5th Cir.

---

[2]Specifically, a DEA special agent testified that when Morales confessed, Morales explained how he would contact Contreras's pager when he wanted to arrange a crossing and delivery of a marijuana shipment.  That special agent also provided extensive testimony regarding the number and timing of pages and other telephonic communication between Morales and Contreras.  *United States v. Contreras*, No. 04-40355 *at 8 n.5 (5th Cir.  Dec. 7, 2007).

2005).  The question then becomes whether legitimate reasons existed to pursue the unusual defense.

In light of all the evidence lodged against Contreras, his attorney settled on an unconventional defense: federal law enforcement officers had a vendetta against local law enforcement officers as a result of some loosely-described turf war over who had the mandate to patrol the Rio Grande River.  On the eve of Contreras's trial the evidence against him was vast and the possible defenses slim.  The Constitution does not vest Contreras with a valid ineffective assistance of counsel claim simply as a consequence of having employed an unsuccessful and unconventional defense.

Operating within this theory, Larry Warner, Contreras's attorney, began questioning the special agent heading the investigation.  Through rhetoric and questioning Warner implied that the special agent had a score to settle.   Warner repeatedly questioned the agent's motives and the genesis of the investigation leading to Contreras's arrest.  Warner knew that the investigation had spawned from Contreras's co-defendant confessing.  Yet he also knew that *Bruton* would preclude the special agent from mentioning the confession, and had in fact, successfully argued  its exclusion at a preliminary hearing. If the special agent had not mentioned the confession perhaps the special agent would have appeared to have been bias, and that bias would have planted a seed of suspicion in the jury.  A seed that perhaps although not completely  validated, would have been sufficient to cast a reasonable doubt to Contreras's true guilt.  The line of questioning simply did not go as planned, and Contreras now complains that undertaking such a theory, given the potential prejudicial effect, was ineffective assistance counsel.

It is not professionally unreasonable to undertake a far-fetched defense when that is the only type of defense available given the sheer amount of evidence against the defendant.  Moreover, successful ineffective assistance claims include:  *Smith v. Dretke*, 417 F.3d 438 (5th Cir. 2005)(lack of legal knowledge regarding the employed defenses); *Rompilla v. Beard*, 545 U.S. 374 (2005)(failure to

investigate); *Pavel v. Hollins*, 261 F.3d 210 (2nd Cir. 2001)(failure to investigate); *Hernandez-Mendoza v. Gonzales*, 537 F.3d 976 (9th Cir. 2007)(failure to timely file pleadings); *Navarro-Orozco v. Gonzalez*, 152 Fed. Appx. 687 (9th Cir. 2005)(failure to communicate with client); *Singh v. Demore*, 150 Fed. Appx. 639 (9th Cir. 2005)(failure to communicate with client); *United States v. Mullins*, 315 F.3d 449 (5th Cir. 2002)(interference with clients right to testify); *United States v. Couto*, 311 F.3d 179 (2nd Cir. 2002)(affirmative misrepresentations by counsel).  What Contreras complains of is not analogous to the examples cited above.

Moreover, even if the Court labeled the invitation of *Bruton*-type evidence professionally unreasonable attorney conduct, the fact remains that no actual prejudice exists.  The Fifth Circuit Court of Appeals has ruled that other evidence of Contreras's guilt abounds. *United States v. Contreras*, No. 04-40355 *at 9 (5th Cir.  Dec. 7, 2007).  Such evidence includes co-conspirator testimony, Border Patrol observations, Contreras's own behavior, his inconsistent explanations, and his extensive telephone contacts to known drug traffickers.  *Id*. The Fifth Circuit's determination that Contreras's attorney's invitation was harmless error in light of the record controls this case for the remainder of its life.[3]

Therefore, the Court faced with the instant claim finds that no professionally unreasonable attorney existed, and even if it did exist, there was no actual prejudice to Contreras's defense. Because the Court does not believe that Contreras can satisfy both *Strickland* prongs, this claim of ineffective assistance of counsel must fail.

C.    Ineffective Assistance of Counsel: *Booker* violation.

For almost twenty years all defendants convicted of violating federal law were subject to

---

[3]As most commonly defined, the law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states in the same case.  *Arizona v. California*, 460 U.S. 605, 618 (1983).

mandatory sentencing guidelines.  On January 12, 2005, the Supreme Court announced that the sentencing guidelines were no longer mandatory.  *United States v. Booker*, 543 U.S. 220, 233 (2005).  The Court went further, "the Government (and the defendant should he so choose) may seek re-sentencing under the system set forth in today's opinion."  *Booker*, 543 U.S. at 267.

Contreras was sentenced on February 11, 2004, and so *Booker* would not be decided for almost another year.  Nevertheless, an appeal was filed on November 8, 2005, ten months after *Booker*, and yet for some yet-unexplained reason, no *Booker*-argument was made via direct appeal. *United States v. Contreras*, No. 04-40355 *at 12 n.4 (5th Cir.  Dec. 7, 2007).

A dispute of fact exists as to whether the movant ever asked his attorney, Larry Warner, to argue *Booker* via direct appeal.  Attorney Larry Warner emphatically maintains that no such request was ever made.  Evidentiary Hr'g Tr. at 7 (Docket No. 23).  Contreras argues that such request was made at least twice: once to him directly and once to Warner's representative. *Id*. at 13.

Nevertheless, Attorney Larry Warner has taken the position that the decision to, or not to,  argue *Booker* was within the realm of tactical decisions and discretion afforded to every attorney which argues a case via trial or direct appeal.  Warner Aff. at 1 (Docket No. 13).  Contreras maintains that such a decision should not have been made over his pronounced objection. Evidentiary Hr'g Tr. at 18 (Docket No. 23)

Warner further argues that his tactical stance, that is, his knowing refusal to argue *Booker* was justified based on his prior experience.  *Id*. at 7, 8.  Specifically, Warner had represented a client that had received a stiffer sentence after being re-sentenced.  *Id*. Warner argues that it was his sincere belief that Judge Tagle would sentence Contreras to a stiffer penalty if given the opportunity.  *Id*.  Warner argues that it was emphatically his duty, as the attorney in the case, to do everything in his power to prevent Contreras

from receiving a stiffer sentence.  Contreras responds that Warner overstepped his attorney boundaries, and further, that Warner had no right to deprive him of a sentencing hearing in compliance with *Booker*'s holding.  *Id.* at 18.  For its part, the Government concedes the conduct to have been professionally unreasonable, "Contreras has nominally demonstrated ineffective assistance of appellate counsel." Gov't Resp. at 23 (Docket No. 12).  The Government's only opposition arises from whether the movant has sufficiently established actual prejudice from the professionally unreasonable conduct.[4]  *Id.*

### RECOMMENDATION

The Fifth Circuit Court of Appeals had indicated that had Contreras raised the Booker claim on direct appeal it would have remanded to the district court for re-sentencing.  The Fifth Circuit did not find fault with the District Court but with the fact that Contreras did not file a *Booker* claim on direct appeal.  The Government concedes that but for the failure to file a *Booker* claim on appeal, Contreras's case would be remanded to the district court for re-sentencing.

A thorough review of all the files, records, transcripts and correspondence relating to the judgment being challenged conclusively shows that Contreras is entitled to the relief sought.  Accordingly, the Court RECOMMENDS that the relief sought in Contreras's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be GRANTED.  The Court RECOMMENDS that Contreras be

---

[4]The Government misstates the injury in its analysis of what actual prejudice Contreras's received as a result his attorney's failure to argue *Booker*.  The injury here is not contingent on whether the sentencing court would or would not grant a lower sentence, but how the outcome of his proceeding –his appeal– would have been different.  The United States put it best when it wrote, "there's really no question that, had [appellate] counsel raised the *Booker* claim on direct appeal that, like his co-appelees, [sic] his case would have been remanded to the district court for re-sentencing under an  advisory guidelines [sic]." Gov't Resp. at 23 (Docket No. 23).

The injury, or actual prejudice, that Contreras endured is independent of what his sentence will be via re-sentencing.  Contreras is entitled to be sentenced by judicial authority, and not pursuant to the now advisory sentencing guidelines.

re-sentenced pursuant to 28 U.S.C. § 2255.

## NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings and conclusions in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 23rd day of November 2009.

Felix Recio
United States Magistrate Judge